STANLEY vs. RISSE, Executrix.

*April 2 — April 20, 1880.*

*(1) Verdict in equity.   (2) Reversal upon preponderance of evidence.*

1. In equity causes, the verdict of a jury is only in aid of the court, and has not the same effect as a verdict at law.
2. In this cause, which was foreclosure of a mortgage securing a note, a judgment for defendant is reversed because this court is satisfied that a clear preponderance of evidence shows, contrary to the verdict and finding below, that the note was *not fully paid*.

APPEAL from the Circuit Court for *Kenosha* County.

The cause was submitted for the appellant on the brief of *Charles Quarles*, and for the respondent on that of *J. V. Quarles*.

TAYLOR, J.  This was an action to foreclose a mortgage given by the respondent and her deceased husband to the appellant in October, 1866, to secure the sum of $500, with interest at ten per cent. per annum.  It is admitted that one year after the date of the same, $450 was paid — that is, $400 principal and $50 interest, — leaving $100 of principal due at that date.  The defendant alleges in her answer that the whole sum secured by said mortgage has been fully paid. The plaintiff admits that the interest on the $100 was paid regularly to the 27th of October, 1877.  The husband of the defendant died on the 20th of March, 1878.  The issue upon the question of payment was submitted to a jury, and found in favor of the defendant.  The plaintiff moved for a new trial, on the ground that the verdict was against the evidence; his motion was denied, and, without hearing any further proofs, the court found the fact of payment in favor of the defendant, and entered judgment in her favor, dismissing the plaintiff's complaint, with costs.

The case presents a pure question of fact, and, after a care-

ful examination of the evidence, we are forced to the conclusion that the verdict of the jury and the finding of the court are against the clear preponderance of the evidence, and that the judgment ought not to stand. It is true, a jury have found in favor of the defendant after a sufficiently fair trial, so far as we can see from the record; but, as this is an equity case, it cannot be permitted to stand if it is clearly against the weight of evidence. The verdict of a jury in an equity case is only in aid of the court, and the court is not bound by it to the same extent as in a case at law. The law requires this court, upon appeal, to review the questions of fact upon the evidence. In cases of this kind this court has repeatedly held that it would not reverse a finding of fact by the court below, unless it appeared that such finding was clearly against the preponderance of the evidence. *Murphy v. Dunning*, 30 Wis., 296; *Ely v. Daily*, 40 Wis., 52.

In this case there is evidence of great weight in favor of the plaintiff, the effect and weight of which this court can estimate as well as the jury or the court below. They are facts the truth of which does not depend upon mere statements of witnesses upon the stand, the credibility of which can only be fairly estimated by the judge who sees the manner and bearing of the witness, as well as hears what is said. They are most material facts. The plaintiff produces in court the note and mortgage, not in any way cancelled. The note shows the indorsement of the $450, alleged by all parties to have been paid one year after the same was made; and it also has indorsed on it the payment of $10 at the end of each year from that date down to the 27th day of October, 1877, before the death of the husband of the plaintiff; and these indorsements do not appear to have been made up for the occasion. The fact of the possession of these papers by the plaintiff is so inconsistent with the claim of the defendant — that this mortgage was given up to her in October, 1867, that the note was fully paid and surrendered to her in October, 1868, and that

she had them in her drawer until a fire which occurred in 1874, when she took the drawer out and placed it on the sidewalk, and that since that time she has never seen them,— as to render her claim almost incredible, especially as there is an entire absence of any proof that the plaintiff was in the neighborhood of the fire when it occurred.

There is no reasonable way of accounting for the possession of the papers by the plaintiff, consistent with the evidence of the defendant. If she had shown that the plaintiff was at the fire at the time she placed the drawer, with the papers, as she claims, in it, on the sidewalk, there might have been some possibility that he had unlawfully taken them from the drawer. Again, if the note had been paid in 1868, and delivered to the defendant, it is probable that it would have been cancelled in some way, either by marking it paid, erasing the names, or in some other way mutilating the same. If the mortgage upon real estate had been delivered up satisfied, there is at least a presumption that it would have been satisfied of record. All these circumstances are evidence against the defendant, of more or less weight. The testimony of Mr. Baker, who is an intelligent witness, is very damaging to the defendant's case. Mr. Baker says the indorsement on the note, "November 2, 1868, received on the within note $10," is in his handwriting; that the note was in his possession at the time the indorsement was made, and for some time after; yet the defendant swears that the plaintiff was paid $110, the principal and interest due on the note, October 29, 1868, and that the note was then delivered to her. It seems impossible that this should be true, and yet that Mr. Baker should have had it in his possession and have indorsed the payment of one year's interest, November 2, 1868, and that he had it in his possession after that. Mr. Baker could not very well be mistaken as to his handwriting, and the indorsement shows the time it was made. This evidence is almost conclusive against the theory that the note remained in the hands of the defendant from the latter

part of October, 1868, to the time of the fire in 1874; and the inference to be drawn from that theory of the defendant is, that all the indorsements of interest were made after the same came to the possession of the plaintiff, after such fire.   There is also the evidence of the witness Dabbs, who swears positively that he carried the money from the deceased husband of the defendant to pay the interest on this $100 to the plaintiff, four different times, and that the last time he carried the money was in the fall of 1877, the time the last indorsement of interest was made.   The plaintiff himself swears that the note and mortgage have been in his possession ever since the same were given, except whilst the note was in the hands of Mr. Baker; that no part of the $100 has ever been paid; and that the deceased paid the interest on the $100 regularly from 1867 down to 1877, the year before his death.

Against this evidence there is nothing but the evidence of the defendant as to the main fact of the payment, and the surrender of the note and mortgage, and of her servant, who says he heard the matter talked over in the defendant's store in 1868, and saw the deceased pay the plaintiff $100; he says there was a note and mortgage there, and the plaintiff delivered them to the deceased.   This evidence conflicts with the evidence of the defendant, for she swears that the mortgage was delivered to her in 1867, and that she had it in her drawer when the note was paid and delivered up in 1868.   The defendant claims she borrowed $100 of a Mr. Fie, in 1868, to pay this note, and that she handed the money to the deceased to pay it, and that he soon after brought her the note, and supposes he paid the money to the plaintiff.   She does not pretend that she saw her husband pay the money to the plaintiff. The witness Fie swears that he thinks he lent the defendant $100 in 1868.   He guesses it was in 1868.   The defendant also swears that she cannot read the note — does not read English, — but that she knows she got the note, because she saw her name and her husband's name on it, and the figures

$450. It also appears from the evidence that she supposed the whole note had been paid in 1867, and that her husband had deceived her in letting $100 remain unpaid.

The evidence of the defendant and her witness Tymeson can be accounted for by lack of memory, or the mistake of one transaction for another, without attributing to either of them any design to swear falsely; but to sustain the verdict for the defendant, we are forced to hold that the plaintiff and both his witnesses, Baker and Dabbs, were guilty of perjury. If the note was delivered to the defendant in October, 1868, when she says it was, then Baker must have sworn falsely when he says it was in his possession on November 2, 1868, and afterwards, and that on that day he indorsed the payment of $10 thereon. If she had the note, and it was paid in 1868, Dabbs must have committed perjury when he swears that the deceased delivered him the money four years to pay the interest on this note, or else the deceased was under a delusion as to his indebtedness to the plaintiff; and the plaintiff must not only have committed perjury, but have made fraudulent indorsements of interest on the note, for the purpose of making it appear that it had not been paid. These men cannot plead ignorance or want of memory; but the defendant, who cannot read English, either printed or written, might very easily be mistaken as to the nature of the papers she had in her possession, and which she now confounds with this note and mortgage.

This judgment is so plainly against the weight of the evidence in the case, that this court is compelled to reverse the same, within the rule of the cases above cited.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to render judgment in favor of the plaintiff for the relief demanded in his complaint.